

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-22-00022-CV

---

CLAYTON CONSTRUCTION, LLC AND CLAYTON SHOOT, APPELLANTS

V.

ROY B. FERGUSON AND PENE S. FERGUSON D/B/A THE FERGUSON LAW FIRM,
APPELLEES

---

On Appeal from the 394th District Court
Brewster County, Texas
Trial Court No. CVB20435, Honorable Sid Harle, Presiding

---

February 17, 2023

MEMORANDUM OPINION[1]

Before QUINN, C.J., and PARKER and DOSS, JJ.

*Delay haunts the administration of justice. It postpones the rectification of wrong and the vindication of the unjustly accused. It crowds the dockets of the courts, increasing the costs for all litigants, pressuring judges to take short cuts, interfering with the prompt and deliberate disposition of those causes in which all parties are diligent and prepared for trial, and overhanging the entire process with the pall of disorganization and insolubility. But even these are not the worst of what delay does. The most erratic gear in the justice machinery is at the place*

---

[1] Pursuant to Texas Government Code annotated section 73.001 and because all three justices of the Eighth Court of Appeals recused themselves this case was transferred by order of the Supreme Court of Texas to the Seventh Court of Appeals.

*of fact finding, and possibilities for error multiply rapidly as time elapses between the original fact and its judicial determination.*[2]

In this construction dispute involving invoices dating to 2016 (for a project that appears to have begun as early as 2012), Clayton Construction, LLC sued Roy Ferguson and Pene Ferguson (Ferguson) in 2020; Ferguson counterclaimed and asserted a third-party claim against Clayton Shoot.[3] In 2021, the district court dismissed the case for want of prosecution under its inherent authority. Shoot appeals from that order. Because the district court did not abuse its discretion by dismissing the lawsuit for want of prosecution, we affirm the order of the district court.

## Background

On April 8, 2020, Shoot sued Ferguson on a sworn account, in quantum meruit, and for breach of contract over allegedly unpaid construction invoices. It sought liquidated damages of $25,234.25 and attorney's fees, but its pleading curiously indicated it was seeking monetary relief of "over $100,000 but not more than $200,000." The pleading alleged discovery would be conducted under Level 3.[4] Also included in the petition was a jury trial demand and a statement that the jury fee was being tendered, although the record does not reflect the fee was actually paid at that time. Attorney Mario Franke signed the petition for the law firm, Dickinson Wright PLLC. The pleading's signature block also identified Dickinson Wright attorney Mark C. Walker.

---

[2] *Rizk v. Mayad*, 603 S.W.2d 773, 776 (Tex. 1980) (quoting *Southern Pacific Transp. Co. v. Stoot*, 530 S.W.2d 930, 931 (Tex. 1975)).

[3] Hereinafter Clayton S. Construction, LLC and Clayton Shoot shall be referred to collectively as "Shoot."

[4] TEX. R. CIV. P. 190.1; 190.4.

2

On May 15, 2020, Ferguson filed a counterclaim and third-party claim alleging breach of contract, fraud, negligent misrepresentation, and violations of the DTPA.[5]  By mid-June 2020, answers had been filed, written discovery initiated, and responses served.  On July 2, 2020, Ferguson sought a protective order concerning "confidential information" alleged to be protected from discovery.   A protective order was never signed.

Also in July 2020, Franke left Dickinson Wright to join the United States Army's Judge Advocate General Corps.  Another attorney, Adrian Acosta, began employment with the firm in September 2020 and began performing legal services for Shoot in the underlying case.[6]

Except for some attempt by the parties to resolve the motion for protective order in November 2020, the record does not indicate that the parties engaged in any other activity to prepare the case for trial until after August 3, 2021 (approximately 480 days after Shoot filed suit), when the trial court gave notice of its intention to dismiss the lawsuit for want of prosecution pursuant to its inherent power, and set a hearing for August 25.  Suddenly, Shoot engaged in a flurry of filing activity:

- On August 4, Walker filed a notice of appearance in the case stating he would remain as lead counsel for Shoot, with Acosta serving as co-counsel.[7]

---

[5] Texas Deceptive Trade Practices—Consumer Protection Act.   TEX. BUS. & COM. CODE ANN. §§ 17.41–.63.

[6] The appellate record does not indicate that Franke ever filed a motion to withdraw as counsel.

[7] See TEX. R. CIV. P. 8 (providing the attorney in charge is the attorney whose signature first appears on the initial pleading and that attorney is responsible for the suit until the designation is changed by written notice).  Here the attorney in charge was Franke and although he left the firm in July 2020, the designation was not changed until Walker's designation in August 2021.

- On August 18, Acosta filed a certificate expressing his expectation that the case would be ready for trial in July 2022 and acknowledging payment of the jury fee.

- On August 18, Shoot filed a verified motion to retain signed by Acosta. Shoot's motion stated that after the November 2020 attempts to resolve the protective order issue failed, "the parties came to a temporary impasse on some discovery issues." On appeal, Shoot alternatively describes this unresolved discovery dispute as "[bringing] the case to a standstill as the parties tried to work out solutions."

- On August 18, Shoot noticed the depositions of Ferguson, via Zoom, for October 7, 2021.

Ferguson moved to quash the notices[8] and filed a response to Shoot's motion to retain. Ferguson's response informed the trial court that the parties had not even exchanged an email from November 13, 2020, until after the court filed its notice of intention to dismiss.

Following a hearing on the court's dismissal notice and Shoot's motion to retain wherein no evidence was presented, the district court dismissed the lawsuit on September 9, 2021. The court found that the parties failed to show good cause for not prosecuting their suit with greater diligence. Moreover, the court found that the parties "failed to prove that their failures were not intentional or the result of conscious indifference." By the same order, the trial court denied Shoot's motion for reconsideration. This appeal followed.

---

[8] In its motion to retain, Shoot told the trial court it "recently" asked for dates to conduct the depositions of the Fergusons, but that "the Fergusons will not provide such dates until the Court decides on this hearing." The Ferguson's motion to quash offered a different story: it said that Shoot's first communication regarding depositions did not occur until August 12, 2021 (nine days after the trial court issued its notice of intention to dismiss), and argued the deposition request and filings by Shoot "may be an attempt to mislead the Court into believing that there was timely activity by the Plaintiff prior to the Court's Notice of Intent to Dismiss this case for want of prosecution."

4

**Analysis**

Through a single issue, Shoot argues the trial court abused its discretion by dismissing the case for want of prosecution. Trial courts are generally granted considerable discretion in managing their dockets. *In re Conner,* 458 S.W.3d 532, 534 (Tex. 2015) (orig. proceeding) (per curiam). We review a trial court's grant of a motion to dismiss for want of prosecution for abused discretion. *In re Fifty-One Gambling Devices,* 298 S.W.3d 768, 773 (Tex. App.—Amarillo 2009, pet. denied). A trial court abuses its discretion when it acts without reference to guiding rules or principles. *U-Haul Int'l, Inc. v. Waldrip,* 380 S.W.3d 118, 132 (Tex. 2012). "The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *FDIC v. Kendrick,* 897 S.W.2d 476, 479 (Tex. App.—Amarillo 1995, no writ).

Through the exercise of its inherent power to manage its docket, a trial court may dismiss a case that has not been prosecuted with due diligence. *State v. Forty-Two Gambling Devices,* No. 07-09-00383-CV, 2011 Tex. App. LEXIS 1792, at *5 (Tex. App.—Amarillo Mar. 11, 2011, no pet.) (mem. op.). Generally, four factors guide that analysis: (1) the length of time the case has been on file; (2) the extent of activity in the case; (3) whether a trial setting was requested; and (4) whether there exists a reasonable excuse for the delay. *Henderson v. Blalock,* 465 S.W.3d 318, 321–22 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *WMC Mortg. Corp. v. Starkey,* 200 S.W.3d 749, 752 (Tex. App.—Dallas 2006, pet. denied).

As noted above, Shoot's lawsuit was filed in April 2020, but a motion requesting a level three discovery control plan by order was not filed until August 18, 2021. Had the case proceeded under a level one or level two discovery control plan, the discovery period would have already expired before the district court's notice of intended dismissal. *See* Former TEX. R. CIV. P. 190.2(b)(1), 190.3(b)(1)(B).

Although Shoot requested a jury trial in its original petition, the record gives no indication it paid the jury fee until August 2021. "In civil cases, the right of trial by jury is not automatic but arises only where a party has demanded it and paid the applicable jury fee." *Gen. Motors Corp. v. Gayle,* 924 S.W.2d 222, 225 n.1 (Tex. App.—Houston [14th Dist.] 1996, orig. proceeding)*, leave granted, mand. denied,* 940 S.W.2d 598 (Tex. 1997) (per curiam). Moreover, Shoot did not request a trial setting until August 18, 2021, but opined the case would not be ready for trial until July 2022.[9] Civil cases other than family law cases should be brought to trial within eighteen months for jury cases. TEX. R. JUD. ADMIN. 6.1(a), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. F app.

Until the notice of dismissal, the only activity significant to moving the case toward a merits disposition was an initial round of written discovery served in the spring of 2020. The parties apparently exchanged some emails regarding the protective order issue in November 2020, but there is no evidence of record why the inability to reach an agreement indefinitely stalled all pretrial preparation or caused the parties to cease communication for nearly nine months. No party sought a hearing on Ferguson's motion for protective order.

---

[9] Shoot offered no evidence or explanation why the additional time was required or how circumstances would differ from the preceding year when the case languished.

6

On appeal, Shoot identifies two reasons excusing the delay in prosecution: (1) the COVID-19 pandemic and (2) Ferguson's motion for protective order. We recognize that the pandemic certainly affected litigation throughout the world. However, Shoot fails to demonstrate how it prevented further pretrial preparation in this case. For example, there is no evidence of how the pandemic delayed discovery or prevented the parties from moving pretrial issues forward, especially given that the suit was initiated, and discovery commenced during the pandemic.[10] Although Shoot's motion to retain states that counsel's offices were closed, there is no evidence of how Shoot's attorneys and staff were prevented from working remotely to prepare for trial—just like every other law firm in Texas. Shoot's explanation about the absence of jury trials during the pandemic is also a non-sequitur for a lack of pretrial preparation and an appellate record indicating that Shoot had not yet paid a jury fee.

As for the protective order issue, we fail to see how Ferguson's unresolved motion for protective order "brought the case to a standstill . . . ." By the time Ferguson filed its request for a protective order, it had served its discovery responses. Shoot offered no plausible reason why the motion prevented continued pretrial preparation or why Shoot failed to move to compel production of the information it believed was necessary to moving the case to trial. *See Pace v. Jordan,* 999 S.W.2d 615, 622 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (op. on reh'g) (rejecting appellant's argument that motion for protective order "prevented" necessary depositions; appellants had the ability to file a motion to compel).

---

[10] Even Shoot's eleventh-hour deposition notices indicated the intention to examine witnesses via Zoom.

## Conclusion

We hold the district court did not abuse its discretion in dismissing the lawsuit for want of prosecution. We overrule Shoot's issues and affirm the judgment of the trial court.

Lawrence M. Doss
Justice